## Krickle *vs* Commonwealth.

### ERROR TO THE LEXINGTON CITY COURT.

*City ordinances. Construction. Indictment. Nuisance.*

JUDGE EWING delivered the Opinion of the Court.

INDICTMENT.

*Case* 107.

*May* 28.

Indictment.

THIS is an indictment against Francis Krickle, in the City Court of Lexington, in which it is charged that he, "on the 23d day of January, 1839, and on divers other days and times, as well before as after, in the said City, did *suffer* and *permit* a certain house of ill fame, known as a resort for idle, noisy, and dissolute persons, to be kept upon the premises of him, the said Francis Krickle, and the same as aforesaid done, doth yet continue and suffer to remain, to the common nuisance of all the good citizens of the city, to the evil example, &c. and contrary to the form of the ordinance in such case made and provided."

To this indictment the defendant appeared, and his motion to quash, being overruled, he pleaded not guilty, and the jury having found him guilty and assessed his fine to $250, and a judgment being rendered therefor, he has brought the case to this Court.

KRICKLE
vs
COMMONWEALTH

Giving to the charter of the City, a liberal construction, with a view to the effectuation of the objects intended, we are satisfied that the power is conferred on the Mayor and board of Councilmen to adopt ordinances, not only for the suppression of physical nuisances, but also moral nuisances.

City ordinances, penal in their character, are to be construed strictly.

But the ordinances on this subject are highly penal, and the penalties are imposed and made to commence running without and anterior to any notification of the offence, other than that which is afforded by the ordinances, and may accumulate to an enormous amount before the person charged may be apprised that he has been guilty of any offence, prohibited by any ordinance. The ordinances should therefore be strictly construed, and made to apply only to that class of cases in which, and those offenders against whom, the penalties are so distinctly denounced that the offender may know, with reasonable certainty, by reading the ordinances, the offences intended to be embraced and prohibited, as well as the persons against whom the penalties are denounced.

Testing the ordinances by this rule, we can find none that can, with even reasonable certainty, be made to apply to the offence charged against Krickle.

The ordinance of the City.

The first ordinance on the subject, *13th Sec. Book of Ordinances,* provides " that no person shall *erect* or *cause* or permit to remain on his *premises,* any *privy* or other nuisance, so as to *annoy* his neighbors; and when such *privy* or other nuisance shall be *erected* or caused, or permitted to remain, the owner of the premises shall *abate* or *remove* the same, forthwith; and on failure to do so, he shall be fined in a sum not exceeding five pounds, at the discretion of the Mayor, for every twenty-four hours the same shall continue."

The language of the ordinance construed not to embrace the offence.

The language of this ordinance, we think, clearly points to *physical nuisances* only. A *privy* is given as an example of the *kind* or *class* intended. The word '*erect*,' applies appropriately to such kind of nuisance, and so does the word '*abate*' or remove, but points to or applies very inappropriately to a moral nuisance, such as a house of ill fame. And full force and effect may be given to all the words by so applying them. Besides the

denunciation is against the *owner* of the premises, and no penalty is denounced against the more criminal offender who may *keep* and *maintain* the moral nuisance or house of ill fame, who would scarcely have been permitted to escape when a penalty was imposed on the owner only of the premise, for *suffering* and *permitting* the offence, if such a nuisance was within the contemplation of the board.

And this interpretation is strengthened by a subsequent ordinance, in which the Council, having the subject of keeping disorderly houses before them, denounced a penalty against the person who shall *keep* or *maintain* a disorderly house, or *erect* or *cause* any public nuisance to continue for twenty-four hours, yet no penalty is denounced against him who shall *suffer* or *permit* the same.

But if even the first cited ordinance could, by construction, be made to extend to the offence charged, it is certainly so indefinite in its terms as to be calculated to mislead and entrap the citizen. By reading the ordinance, he would have his mind directed to one class of nuisances, and would scarcely be lead to the conclusion that nuisances of a different class were intended.

Besides, the indictment is wholly defective in failing to aver, specifically, the *length of time* or *number of days* the nuisance was *continued*. The penalty of five pounds is imposed for *each twenty-four hours* that the nuisance is permitted to *continue*. Time, in this case, is material. And, as in all indictments, a *day* must be averred on which the offence was committed, *a fortiori*, where time is material to show that an offence has been committed, as well as the extent of the penalty to which the offender is sought to be subjected, the *time* should be distinctly averred.

It is not even averred with precision, in this indictment, that the nuisance was *continued a single twenty-four hours*, without which no offence was committed.

The judgment of the City Court is reversed, and cause remanded, that the indictment may be quashed.

*Johnson* and *McCalla* for Krickle: *Cates, Atto. Gen.* for Commonwealth.

The indictment defective in failing to aver a continuance of the nuisance for any definite time, without which it does not appear that the ordinance was violated.

Judg't reversed, and mandate that indictment be quashed.